# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**REALTY MORTGAGE CORPORATION**                                    **APPELLANT**

### CIVIL ACTION NO.: 3:09-cv309-HTW-LRA

---

### BRIEF OF THE APPELLANT

---

Submitted By the Appellant

REALTY MORTGAGE CORPORATION

By Its Attorneys

Craig M. Geno.  (MSB No. 4793
Melanie T. Vardaman (MSB No. 100392)
HARRIS JERNIGAN & GENO, PLLC
587 Highland Colony Parkway (39157)
Post Office. Box 3380
Ridgeland, MS 39158-3380
Telephone No.: (601) 427-0048
Facsimile No.:  (601) 427-0050

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.   STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . iv

II.  STATEMENT OF BASIS FOR APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . iv

III. STATEMENT OF ISSUES AND APPLICABLE STANDARD OF REVIEW . . . . . . iv

    A.   Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

    B.   Applicable Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

IV.  STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.   Proceedings in the Case and Factual Background . . . . . . . . . . . . . . . . . . 1

V.   ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.   The Bankruptcy Court Erred By Denying the Debtor's
        Amended Motion to Approve Compromise and Settlement
        With Countrywide Bank, FSB and Countrywide Home Loans, Inc.. . . . . . . . . . 6

    B.   The Bankruptcy Court Erred By Considering Facts That Were Not
        On the Record In Connection With the Debtor's Amended Motion
        to Approve Compromise and Settlement With Countrywide Bank,
        FSB and Countrywide Home Loans, Inc. and the Hearing on same
        conducted by the Bankruptcy Court on April 24, 2009. . . . . . . . . . . . . . . . . 6

    C.   The Bankruptcy Court Erred By Considering Facts and Law That
        Were Not In Existence In Connection With the Debtor's Amended
        Motion to Approve Compromise and Settlement With Countrywide
        Bank, FSB and Countrywide Home Loans, Inc. and the Hearing
        on same conducted by the Bankruptcy Court on April 24, 2009. . . . . . . . . . . . 6

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**A.    Case Authority**

Page Nos.

*In re Allied Properties, LLC, 2007 WL 1849017 at *3*
    *(Bkrtcy.S.D.Tex. June 25, 2007)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re AWECO, Inc., 725 F.2d 293, 298 (5th Cir. 1984)* . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

*Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 130,*
    *60 S.Ct. 1, 14 (1939)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Chaney v. City of Galveston, 368 F.2d 774, 776 (5th Cir. 1966)* . . . . . . . . . . . . . . . . . . . 18

*Cook v. Waldron, 2006 WL 1007489 at *4 (S.D.Tex. April 18, 2006)* . . . . . . . . . . . . . . . . 16

*In re Emerald Oil Co., 807 F.2d 1234, 1239 (5th Cir. 1987)* . . . . . . . . . . . . . . . . . . . . . . ii

*Florida Trailer and Equipment Co. v. Deal, 284 F.2d 567, 571*
    *(5th Cir. 1960)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Foster Mortgage Corp. v. Connecticut General Life Insurance*
    *Company, 68 F.3d 914, 917 (5th Cir. 1996)* . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

*In re Fussell, 928 F. 2d 712, 1715 (5th Cir. 1991)* . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

*In re Jackson Brewing Co., 624 F.2d 599, 602 (5th Cir. 1980)* . . . . . . . . . . . . . . . . . . 7-8, 15

*Jiminez v. Mary Washington College, 57 F.3d 369, 384 (4th Cir. 1995)* . . . . . . . . . . . . . . 11

*Official Comm. of Unsecured Creditors v. Cajun Electric*
    *Power Coop., Inc., 119 F.3d 349 (5th Cir. 1997)* . . . . . . . . . . . . . . . . . . . . . . . 8, 15

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc.*
    *v. Anderson, 390, U.S. 414 (1968)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Traina v. Whitney National Bank, 109 F.3d 244, 246 (5th Cir. 1997)* . . . . . . . . . . . . . . . ii

*In re: United Airlines, Inc., _____ F.3d _____, 2009 U.S. App.*
    *LEXIS 968 (7th Cir. 2009)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986)* . . . . . . . . . . . . . . . . . . . 16

*United States v. U.S. Gypsum Co., 333 U.S. 364, 394-96 (1948)* . . . . . . . . . . . . . . . . . . . . . . . 10

*In re W.T. Grant Co., 699 F.2d 599, 608 (2nd Cir. 1983)* . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Weissman v. Freeman, 868 F.2d 1313, 1322 (2nd Cir. 1989)* . . . . . . . . . . . . . . . . . . . . . . . . 11

**B.**    **Statutes and Other Material**

*10 Lawrence P. King, Collier on Bankruptcy, ¶ 9019.01 at 9019-2;*
*¶ 9019.02 at 9019-4; ¶ 9019.03 at 9019-5 (15th ed. Revised 2007)* . . . . . . . . . . . . . . . 7, 8

*11 U.S.C § 507(a)(4)(A) and (B)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*28 U.S.C. § 158* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

## I.   STATEMENT REGARDING ORAL ARGUMENT

The Appellant respectfully requests that this Honorable Court hear oral argument regarding this matter.

## II.   STATEMENT OF BASIS FOR APPELLATE JURISDICTION

The United States District Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158.

## III.   STATEMENT OF ISSUES AND APPLICABLE STANDARD OF REVIEW

### A.   Statement of Issues

Realty Mortgage Corporation ("Realty" or the "Appellant") designates the following issues for review by this Court:

1.   The Bankruptcy Court erred by denying the Debtor's Amended Motion to Approve Compromise and Settlement With Countrywide Bank, FSB and Countrywide Home Loans, Inc. (Docket #127).

2.   The Bankruptcy Court erred by considering facts that were not on the record in connection with the Debtor's Amended Motion to Approve Compromise and Settlement With Countrywide Bank, FSB and Countrywide Home Loans, Inc. (Docket #127) and the Hearing on same conducted by the Bankruptcy Court on April 24, 2009.

3.   The Bankruptcy Court erred by considering facts and law that were not in existence in connection with the Debtor's Amended Motion to Approve Compromise and Settlement With Countrywide Bank, FSB and Countrywide Home Loans, Inc. (Docket #127) and the Hearing on same conducted by the Bankruptcy Court on April 24, 2009.

**B.    Applicable Standard of Review**

The Bankruptcy Court's denial of a settlement agreement is subject to review for abuse of discretion. *In re Emerald Oil Co., 807 F.2d 1234, 1239 (5th Cir. 1987).* The Bankruptcy Court's findings of fact are reviewed under the clearly erroneous standard and its legal conclusions are subject to *de novo* review. *In re Fussell, 928 F. 2d 712, 1715 (5th Cir. 1991).* Furthermore, any mixed questions of law and fact and/or any questions pertaining to application of the facts to the law are subject to *de novo* review. *Traina v. Whitney National Bank, 109 F.3d 244, 246 (5th Cir. 1997).*

## IV.  STATEMENT OF THE CASE

### A.    Nature of the Case

This matter is before this Court on appeal from the Final Judgment Denying Amended Motion to Approve Compromise and Settlement With Countrywide Bank, FSB and Countrywide Home Loans, Inc. and related Opinion which was entered by the United States Bankruptcy Court for the Southern District of Mississippi, Jackson Division (the "Bankruptcy Court") on May 1, 2009. Subsequent to the Bankruptcy Court's ruling, Realty filed its Notice of Appeal or on about May 11, 2009. Thereafter, on or about May 12, 2009, Realty filed its Designation of Record and Statement of Issues on Appeal.  There is no Appellee in this matter.  This brief is submitted by Realty in support of its Designation of Record and Statement of Issues on Appeal.

### B.    Proceeding in the Case and Factual Background

The facts of this case are relatively straightforward, mostly undisputed and are set forth in various pleadings and orders filed in the Realty's Bankruptcy Case, Case Number 09-00544, which have been designated as part of the record for appeal.

Realty's Chapter 11 case was initiated by the filing of a voluntary petition pursuant to Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") on February 18, 2009 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of Mississippi (the "Bankruptcy Court"), and assigned Case No. 09-00544-NPO (the "Bankruptcy Case").

Realty, a Mississippi corporation established in 1988, was a multi-state mortgage firm operating with twenty (20) years of service to the real estate industry in Mississippi and more than forty (40) states.  Realty specialized in traditional A-paper lending.  This included FHA, VA, state specific bond loans, FNMA and FHLMC loans.  The primary customer base was middle-income

1

borrowers and first-time home buyers.  In 2008, Realty closed approximately $1.4 billion in mortgages.

Realty operated in two primary lending sectors: wholesale and retail originations.  The wholesale division solicited mortgages from small brokers nationwide, which entailed sponsored underwriting, closing, funding and shipping of the loans into the secondary market using funding sources unavailable to small "mom and pop" type origination offices.  The retail division originated mortgages directly from the public in branch offices in several states, funding loans with the same funding sources.  Realty's home office is in Flowood, Mississippi and the largest hub branches were in Georgia, Tennessee, Texas, New Mexico and California.

Countrywide Bank, FSB, Countrywide Home Loans, Inc. (individually and collectively, "Countrywide") had been Realty's major correspondent lender and, prior to the Petition Date, purchased loans from Realty under various agreements, including the following: (a) Master Repurchase Agreement dated as of March 17, 2008 (as amended and supplemented, the "Repurchase Agreement"); and (b) Loan Purchase Agreement dated January 26, 1995 (as amended and supplemented, the "Loan Purchase Agreement" and, together with the Repurchase Agreement, the "Countrywide Agreements").

In 2007, Realty downsized several areas of operation in response to the significant changes in the mortgage industry and a reduction in available mortgage products.  In January 2009, Realty closed its wholesale division.  Prior to the Petition Date, Realty began to wind down its business operations, which included finalizing the sale process for loans previously sold by Realty to Countrywide under the Countrywide Agreements.  At the same time, a number of creditors, lessors and other claimants were applying pressure on Realty to collect debts, enforce lease terminations, landlord lien claims and otherwise cause Realty to devote time to things other than the wind-down

of its business.  Accordingly, in order to allow Realty to orderly wind down its business, Realty filed its Bankruptcy Case on the Petition Date.

After the Petition Date, Realty no longer originated loans through either its wholesale or retail divisions.  Instead, recognizing that an orderly wind-down of its business operations was in the best interest of Realty's bankruptcy estate and its creditors, Realty has focused its resources to that end.

On February 26, 2009, the Debtor filed its Emergency Motion for Authority to Use Cash Collateral and for Other Relief (the "DIP Motion"), seeking authority to obtain funding for weeks 1 and 2 of the Bankruptcy Case.  Following the February 27, 2009 hearing on the DIP Motion, the Bankruptcy Court entered its Interim Order Authorizing Debtor to Obtain Post-Petition Secured Financing and Scheduling a Final Hearing (the "Interim Order"), authorizing Realty to obtain post-petition secured financing from Countrywide (the "DIP Loan") in the amount of $82,171 ($50,369 for week 1 and $32,802 for week 2).

On March 2, 2009, Realty filed its First Amended and Supplemental Emergency Motion for Authority to Use Cash Collateral and/or to Obtain Credit and Grant Security Therefor and For Other Relief (the "First Amended DIP Motion"), seeking authority to obtain additional funding for weeks 3 and 4 of the Case.  Following the March 12, 2009 hearing on the First Amended DIP Motion, the Bankruptcy Court entered its Amended Interim Order Authorizing Debtor to Obtain Post-Petition Secured Financing and Scheduling a Final Hearing  (the "Amended Interim Order"), authorizing Realty to obtain additional post-petition secured financing from Countrywide under the DIP Loan in the amount of $75,096 ($32,302 for week 3 and $42,794 for week 4).

On March 4, 2009, Realty  filed its Second Amended and Supplemental Emergency Motion for Authority to Use Cash Collateral and/or to Obtain Credit and Grant Security Therefor and For

Other Relief (the "Second Amended DIP Motion"), seeking authority to obtain additional funding for weeks 5, 6 and 7 of the Bankruptcy Case and approval, on a final basis, of all borrowings under the DIP Loan.   Alternatively, the Second Amended DIP Motion sought use of collateral of Countrywide as "cash collateral" for this funding.

On March 20, 2009, Countrywide filed its objection to the Second Amended DIP Motion, stating that it was unwilling to fund the amount proposed in the Second Amended DIP Motion and objecting to Realty's proposed use of amounts credited to the "Over/Under Account" described in the Countrywide Agreement (the "O/U Account") as "cash collateral."   Among other things, Countrywide asserted that the O/U Account is not an actual, separate bank account in Realty's name that holds actual cash deposits of Realty.   Rather, the O/U Account is merely an accounting mechanism utilized to assist Countrywide and Realty in settling transactions under the Countrywide Agreements and, as such, did not constitute "cash collateral."   Further, Countrywide asserted that even if amounts credited to the O/U Account did constitute "cash collateral," Realty had not demonstrated either that the use of such funds was necessary or that Countrywide was adequately protected with respect to the O/U Account.

At the March 23, 2009 hearing on the Second Amended DIP Motion, Realty and Countrywide announced an agreed resolution of Countrywide's objection to the Second Amended DIP Motion (under which Countrywide would provide additional funding for weeks 5 and 6) premised upon a global resolution of outstanding claims and controversies between the parties, all as described more particularly below.

On April 1, 2009, the Bankruptcy Court entered its Final Order Authorizing Debtor to Obtain Post-Petition Secured Financing (the "Final Order"), authorizing Realty to obtain additional post-

petition secured financing from Countrywide under the DIP Loan in the amount of $139,573 ($90,525 for week 5 and $49,048 for week 6).

The Final Order approves, on a final basis, the security and claims granted Countrywide in connection with the DIP Loan, namely: (a) pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first priority lien on and security interest in all pre-petition and post-petition property of Realty (except avoidance actions under Chapter 5 of the Bankruptcy Code) that constitutes unencumbered property of Realty, including, without limitation, Realty's interest in the O/U Account; (b) pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected junior lien on and security interest in all pre-petition and post-petition property of Realty subject to valid and perfected liens in existence on the Petition Date or to valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code (all property in which Countrywide was granted a lien and security interest being referred to as the "DIP Collateral"); and (c) pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed super-priority claim.

Thereafter, Realty and Countrywide agreed to settle certain pending claims and controversies and prepared a written settlement agreement to present to the Bankruptcy Court for approval pursuant to Rule 9019 of the Bankruptcy Rules (the "Countrywide Settlement"). On March 30, 2009, Realty filed its Amended Motion to Approve Compromise and Settlement With Countrywide Bank, FSB and Countrywide Home Loans, Inc. (the "Motion to Approve Countrywide Settlement"). The Motion to Approve Countrywide Settlement was served on all of Realty's creditors and parties-in-interest. No objections were filed to the Motion to Approve Countrywide Settlement.

The Bankruptcy Court conducted a hearing on the Motion to Approve Countrywide Settlement on April 24, 2009 (the "Settlement Hearing"). Despite arguments of counsel for Realty

and Countrywide, the testimony of Realty's representative at the Settlement Hearing stating that the Countrywide Settlement should be approved, and the fact that no objection to the Motion to Approve Countrywide Settlement was filed, the Bankruptcy Court denied the Motion to Approve Countrywide Settlement and on May 1, 2009, entered its Memorandum Opinion and Order Denying Amended Motion to Approve Compromise and Settlement With Countrywide Bank, FSB and Countrywide Home Loans, Inc. (the "Opinion") and Final Judgment Denying Amended Motion to Approve Compromise and Settlement With Countrywide Bank, FSB and Countrywide Home Loans, Inc. (the "Judgment"). Subsequent to the entry of the Bankruptcy Court's Opinion and Judgment, Realty filed its Notice of Appeal or on about May 11, 2009. Thereafter, on or about May 12, 2009, Realty filed its Designation of Record and Statement of Issues on Appeal. There is no Appellee in this appeal.

## V. ARGUMENT AND AUTHORITIES

**A.** **The Bankruptcy Court Erred By Denying the Debtor's Amended Motion to Approve Compromise and Settlement With Countrywide Bank, FSB and Countrywide Home Loans, Inc.**

**B.** **The Bankruptcy Court Erred By Considering Facts That Were Not On the Record In Connection With the Debtor's Amended Motion to Approve Compromise and Settlement With Countrywide Bank, FSB and Countrywide Home Loans, Inc. and the Hearing on same conducted by the Bankruptcy Court on April 24, 2009.**

**C.** **The Bankruptcy Court Erred By Considering Facts and Law That Were Not In Existence In Connection With the Debtor's Amended Motion to Approve Compromise and Settlement With Countrywide Bank, FSB and Countrywide Home Loans, Inc. and the Hearing on same conducted by the Bankruptcy Court on April 24, 2009.**

Realty submits that the Bankruptcy Court erred in denying the  Motion to Approve Countrywide Settlement because the Bankruptcy Court considered facts and issues that were not on the record at the Settlement Hearing and also considered facts that did not exist in connection with the Motion to Approve Countrywide Settlement. Accordingly, Realty submits that the Bankruptcy

Court did not make an informed decision based on an objective evaluation of the situation before it, and, therefore, abused its discretion in denying the Motion to Approve Countrywide Settlement.

A basic policy in bankruptcy cases is that compromise is favored. *10 Lawrence P. King, Collier on Bankruptcy,* ¶ *9019.01 at 9019-2 (15th ed. Revised 2007).* "We must remember that compromises are a normal part of the process of reorganization." *Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 130, 60 S.Ct. 1, 14 (1939).* Further, compromises and settlements are "often desirable and wise methods of bringing to close proceedings otherwise lengthy, complicated and costly." *Florida Trailer and Equipment Co. v. Deal, 284 F.2d 567, 571 (5th Cir. 1960).*

Courts have built on this policy by adopting the standard set forth in the U.S. Supreme Court decision, *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390, U.S. 414 (1968).* In *TMT,* The Supreme Court mandated that a bankruptcy court, in considering whether to approve a compromise and settlement, should:

> apprise [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties in collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

*Id. at 424.*

The Fifth Circuit standard has been stated in the *Official Comm. Of Unsecured Creditors v. Cajun Electric Power Coop., Inc:*

   i)     [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law,

   ii)    [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and

   iii)   [a]ll other factors bearing on the wisdom of the compromise.

*119 F. 3d 349 (5th Cir. 1997).* These factors have been summarized as requiring the compromise to be "fair and equitable" and "in the best interests of the estate." *TMT, 390 U.S. at 424; Cajun Elec., 119 F.3d at 355.*

With respect to the first factor listed in *Cajun Electric*, the Fifth Circuit has held that it is not necessary for a court to conduct a mini-trial or evidentiary hearing to determine the outcome of the dispute being compromised. *Cajun Elec., 119 F.3d at 355.* If a full evidentiary hearing on the merits of the dispute was required, "[t]here would be no point in compromise; the parties might as well go ahead and try the case." *10 Collier on Bankruptcy ¶ 9019.02 at 9019-4.* The Court, instead, should be apprised of the relevant facts and law sufficient to make an "informed and intelligent decision. . ." *Cajun Elec., 119 F.3d at 355,* and determine "whether the settlement falls below the lowest point in the range of reasonableness." *10 Collier on Bankruptcy ¶ 9019.03 at 9019-5.*

With regard to the third, catch-all factor set forth in *Cajun Electric*, the Fifth Circuit has specified additional factors that bear on the decision to approve a proposed settlement. First, the court should consider the best interests of the creditors, "with proper deference to their reasonable views." *Foster Mortgage Corp. v. Connecticut General Life Insurance Company, 68 F.3d 914, 917 (5th Cir. 1996).* Further, the Fifth Circuit has held that "a bankruptcy court should consider the amount of creditor support for a compromise settlement as a 'factor bearing on the wisdom of the compromise' as a way to show deference to the reasonable view of creditors." *Foster Mortgage Corp., 68 F.3d 914 at 918.* And, a court should consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.*

In deciding whether a settlement is "fair and equitable", a judge in bankruptcy must make a well-informed decision "comparing the terms of the compromise with the likely rewards of litigation." *In re Jackson Brewing Co., 624 F.2d 599, 602 (5th Cir. 1980).* The words "fair and

equitable" are not only terms of art in bankruptcy–they mean "that senior interests are entitled to full priority over junior ones." *In re AWECO, Inc., 725 F.2d 293, 298 (5th Cir. 1984).*

At the Settlement Hearing, counsel for Realty provided the Bankruptcy Court with an overview of the Countrywide Settlement. In summary, the Countrywide Settlement settles and compromises all of the claims of Countrywide against Realty and all of the claims of Realty against Countrywide and provides the following:

    i)    Countrywide forgives the post-petition DIP loan it made to Realty which, with attorney fees and interest, is well over $300,000.00;

    ii)    Realty receives a cash payment of $325,000.00 from Countrywide;

    iii)    Countrywide will designate $700,000.00 of the funds remaining in the O/U Account (the "$700,000.00 Fund") to pay third party claims, if allowed, and file a motion with the Bankruptcy Court to establish a procedure for third-party claimants that believe they have an interest in these funds to assert a claim, superior to the secured claim of Countrywide, to the funds;

    iv)    a release by Realty of claims against Countrywide and its employees, affiliates, agents and representatives and a similar release by Countrywide of Realty and its employees, affiliates, agents, representatives, guarantors and shareholders.

*(See Transcript of the Settlement Hearing, pages 3-5; hereinafter referred to as "Transcript").*

It is apparent that the Bankruptcy Court went into the Settlement Hearing with certain misconceptions regarding the terms of the Countrywide Settlement. For example, the Bankruptcy Court was under the mistaken impression that the Countrywide Settlement contained an injunction that would prohibit certain third-parties with potential claims against the $700,000.00 Fund from pursuing those claims against Countrywide directly. *(See Transcript, pages 5-6)*. The Bankruptcy Court was also mistaken in its belief that the Countrywide Settlement contemplated releases by the third-party claimants against Countrywide. Counsel for Realty and Countrywide specifically addressed the Bankruptcy Court's misconceptions and assured the Bankruptcy Court that the Countrywide Settlement did not contain any type of injunction or release by third-party claimants.

*(See Transcript, pages-5-7; pages 8-10)*. Specifically, counsel for Realty stated that there "is no injunction against those kind of third-party claims against Countrywide." *(See Transcript, page 6, lines 1-2)*. Indeed, the Countrywide Settlement contains no provisions regarding releases by the third party claimants the Bankruptcy Court contemplated and it contains no injunctions whatsoever. *(See Exhibit "A" to Motion to Approve Countrywide Settlement)*. Likewise, counsel for Countrywide stated that "the settlement agreement [does not] contemplate releases or injunctions ... that third parties may have against Countrywide." *(See Transcript, page 7, lines 3-5)*. Despite the lack of any provision in the Countrywide Settlement imposing an injunction or limiting the rights of third parties to make claims against Countrywide and the statements of counsel for Realty and Countrywide assuring the Bankruptcy Court that its concerns were unfounded, the Bankruptcy Court, in its Opinion, stated that "[i]t did, however, likely affect the rights of Third Party Claimants as to future litigation. We can expect that Countrywide would claim that this Settlement Agreement caps its liabilities to these Third Party Claimants at $700,000.00." *(See Opinion, page 6)*. These findings by the Bankruptcy Court are speculative at best, evidence the Bankruptcy Court's misconceptions as to the Countrywide Settlement and its disregard of the facts that were presented at the Settlement Hearing which clearly established that the Countrywide Settlement would not in any way enjoin or limit the rights of the third-party claimants. Where a lower court disregards material evidence in the record to reach a contrary conclusion, there is clear error. *United States v. U.S. Gypsum Co., 333 U.S. 364, 394-96 (1948)(finding clearly erroneous error existed when, although there was evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed and where testimony is in conflict with contemporaneous documents,*

*it can be given little weight.[1]*).  Where an appellant court was left with the definite conviction that the factual findings of the district court were clearly erroneous because it ignored substantial evidence or that it failed to evaluate substantial contrary evidence in making its findings of fact, error has been committed.  *Jiminez v. Mary Washington College, 57 F.3d 369, 384 (4ᵗʰ Cir. 1995).*  A district court's decision was clearly erroneous because it implausibly overlooked and failed to give detailed consideration to key evidence. *Weissman v. Freeman, 868 F.2d 1313, 1322 (2ⁿᵈ Cir. 1989).*  Bankruptcy and district courts ignored critical evidence in establishing a value of certain property and parties are entitled to reasoned judicial findings based on facts in the record, not guesses. *In re: United Airlines, Inc., ____ F.3d ____, 2009 U.S. App. LEXIS 968 (7ᵗʰ Cir. 2009).*  Accordingly, the Bankruptcy Court's references in its Opinion to the cases from the Second Circuit Court of Appeals that the U.S. Supreme Court has agreed to hear are not applicable to the Countrywide Settlement in the instant case because those issues are not present here.  *(See Opinion, pages 6-7).*

The Bankruptcy Court's "assumption" that there were issues in existence in connection with this matter regarding the United States Supreme Court's agreement to hear certain third-party release/injunction issues in bankruptcy cases was simply wrong – there are no such issues here as clearly outlined in the Countrywide Settlement.

In its Opinion, the Bankruptcy Court found that the Countrywide Settlement treated third-party claimants looking to the $700,000.00 Fund in an "unfair manner" because the third-party claimants would have to bear the risk that:

---

[1] Although the testimony in this case is not in conflict with the Countrywide Settlement, the Bankruptcy Court's findings and conclusions with respect to the Countrywide Settlement, and especially the issues the Bankruptcy Court was concerned about with respect to the release of third-party claims and an injunction, are clearly contradicted by the Countrywide Settlement itself.  Further, the Countrywide Settlement (contrary to the Bankruptcy Court's findings) contains a fair and reasonable procedure for the resolution of the claims of the third-party claimants.

1.    They would prevail on the claims procedure described in the Settlement Agreement;

2.    They would succeed in challenging Countrywide's interest in the $700,000.00;

3.    The $700,000.00 estimate was correct and sufficient to cover all the claims; and

4.    Any award granted by the Court would be collectible since the Settlement Agreement is not funded with real dollars but only by an "accounting mechanism.". In order to recover money damages, the Third Party Claimants would then bear the burden of filing an action in another court to collect their damages if Countrywide did not pay them voluntarily.

*(See Opinion, page 6).*

The Bankruptcy Court was apparently also under the misconception that the claims of the third-party claimants were "slam dunks." In fact, the reality is that the third-party claimants must prove that they have an ownership interest in the O/U Account in order to prevail against Countrywide, as explained by counsel for Realty. *(See Transcript, page 13).* Additionally, those claims of ownership against the O/U Account are not owned by Realty, nor could Realty assert those claims because it lacks the standing to assert the claims – concepts and facts the Bankruptcy Court apparently overlooked or misunderstood. In any event, the claims of the third-party claimant are going to be defended by Countrywide in one forum or another. Countrywide has certainly not "confessed" any of those claims. Realty recognizes that the claims are, in fact, disputed and will be vigorously defended by Countrywide. It remains to be seen whether the third-party claimants will, in fact, pursue those claims, but at least Realty has given those claimants a fund against which to lodge their claims, and one court/one forum in which to litigate those claims (and in which one lawyer could probably represent all of those claimants because of the common issues of fact and law). Moreover, those claimants still have the ability to pursue any claims against Countrywide outside the Bankruptcy Court.

Again, the Bankruptcy Court ignored the actual facts presented at the Settlement Hearing—that the Countrywide Settlement actually gives the third-party claimants rights and remedies they would **not** have absent the Countrywide Settlement. Specifically, the Countrywide Settlement establishes a procedure to allow the third-party claimants to pursue their claims against Countrywide in the Bankruptcy Court, while at the same time protecting the third-party claimants potential priority claims against Realty. The "risks" outlined by the Bankruptcy Court in its Opinion are risks that the claimants would bear regardless of the Countrywide Settlement. The Countrywide Settlement does not, as the Bankruptcy Court's Opinion implies, impose "new" risks on the third-party claimants. Further, it appears that the Bankruptcy Court was swayed by, and based its Opinion on, in part, "head shaking" by individuals in the courtroom at the Settlement Hearing. *(See Transcript, page 15, lines 22-25; page 16, lines 1-2 )*. The Bankruptcy Court acknowledged the fact that no objections were filed to the Motion to Approve Countrywide Settlement by stating that "I know that no one in the audience filed an objection, so you don't have counsel and you're not here to make any sort of presentation." *(See Transcript, page 37, lines 12-14)*. Further, the Bankruptcy Court never established whether or not the individuals present in the courtroom at the Settlement Hearing were creditors of Realty, had an interest in the $700,000.00 Fund or were merely spectators. Therefore, the Bankruptcy Court improperly considered facts not on the record (the mere presence of individuals in the courtroom and the shaking of heads by these individuals) in rendering its Opinion.

The Bankruptcy Court determined that the Countrywide Settlement "clearly did not settle all the litigation". *(See Opinion, page 6)*. However, the record reveals that the Countrywide Settlement would settle all disputes between **Realty and Countrywide**. *(See Motion to Approve Countrywide Settlement)*. Although there may be litigation by third-party claimants against Countrywide, the

Countrywide Settlement will bring an end to litigation of any and all claims between Realty and Countrywide. Accordingly, the Bankruptcy Court erred in finding that the Countrywide Settlement would not end disputes between Realty and Countrywide. As noted by the Bankruptcy Court's Opinion, it heard testimony from Realty's representative, Ms. Sally Wood ("Wood") regarding the Countrywide Settlement. *(See Opinion, page 5)*. Although initially Wood testified that she was not satisfied with the mechanism that has been set up for the claimants to assert their claims against the $700,000.00 Fund, Wood later clarified her position regarding the claim mechanism aspect of the Countrywide Settlement. Specifically, Wood testified that Realty would have **preferred** for the Countrywide Settlement to provide that the $700,000.00 Fund be limited to only the claims of certain groups of claimants, including the commissioned agents, appraisers and credit reporting entities but that she (and Realty) now understood that neither Realty nor Countrywide could not agree to limit the claim process to only those groups of people because there may be another individual or entity in the universe of claims that would be overlooked by such limitation. *(See Transcript, pages 34-35)*. Further, when questioned by the Bankruptcy Court regarding her change in testimony Wood stated that "[t]he concern has always been that the settlement agreement, in its overall fashion, was in the best interest of Realty Mortgage, and the only concern that we had was the definition of that carved-out portion. But I'm not an attorney, and it appears that the way it's defined is the way that it has to be; that there has to be a claim by the parties; and we--absent of an agreement to simply be able to pay these people, this was, it appears, the only best way to settle with Countrywide."*(See Transcript, page 34, lines 8-17)*. The Transcript of the Settlement Hearing is clear that Wood was only concerned about the "verbiage" related to the claim process for third-party claimants in the Countrywide Settlement, but that after speaking to Realty's lawyer during a recess, she (and Realty) was comfortable with the verbiage contained in the Countrywide Settlement. Therefore, Wood was

not "recanting" her previous testimony when she took the witness stand again but, instead, was simply clarifying the claim mechanism to the $700,000.00 Fund for third-party claimants. Accordingly, the Bankruptcy Court erred by relying so heavily on only one portion of Wood's testimony in its decision to deny the Countrywide Settlement.   In accessing the merits of a settlement, a bankruptcy court must determine if the settlement is fair and equitable and in the best interest of the estate. *Jackson Brewing Co., 624 F.2d at 602.*  As set forth hereinabove, in making this evaluation, courts must consider the factors set forth by the Fifth Circuit in *Cajun Electric and Foster Mortgage.* The Transcript of the Settlement Hearing and the Bankruptcy Court's Opinion evidence the fact that the Bankruptcy Court failed to consider the first two factors in the instant case – (1) the probability of success in litigation by Realty against Countrywide, with due consideration for the uncertainty in law and fact; and (2) the complexity and likely duration of the litigation, any attendant expenses, inconvenience and delay.  However, at the Settlement Hearing counsel for Realty addressed these factors in remarks and argument presented to the Bankruptcy Court.*(See Transcript, pages 18-22)*.  There were no objections filed to the Motion to Approve Countrywide Settlement.   While the Bankruptcy Court had informally advised counsel of its concerns regarding the apparent misconceptions the Bankruptcy Court had, counsel prepared for those concerns and adequately addressed them.  Because those were the only concerns the Bankruptcy Court raised in the course of the Settlement Hearing and in its Opinion, the remaining provisions of the Countrywide Settlement, and accompanying motion, were taken as confessed as in the best interest of Realty's bankruptcy estate and were not specifically addressed at the Settlement Hearing – nor should they have been, in light of the lack of objections thereto.  As a result, this brief fully fleshes out those facts and issues that were not (and should not have been) facts

15

and issues at the Settlement Hearing, but they are mentioned here for the Court's edification and for an explanation as to why they were not fully addressed at the trial court level.

The burden of proving that a settlement is fair and equitable falls on Realty. *In re Allied Properties, LLC, 2007 WL 1849017 at *3 (Bkrtcy.S.D.Tex. June 25, 2007)* That burden is not high. The proponent need only show that the decision to settle and compromise a claim falls within the "range of reasonable litigation alternatives". *In re W.T. Grant Co., 699 F.2d 599, 608 (2nd Cir. 1983); Cook v. Waldron, 2006 WL 1007489 at *4 (S.D.Tex. April 18, 2006).*

It is clear that the Bankruptcy Court's only concern regarding the Countrywide Settlement was focused on the rights and remedies of the third-party claimants related to Countrywide and the $700,000.00 Fund and not whether or not the Countrywide Settlement was in the best interest of Realty's **bankruptcy estate**. Although the Fifth Circuit has held that a bankruptcy court is obligated to independently consider whether creditors' best interests are being served and "[e]quitable considerations should be preeminent in the exercise of bankruptcy jurisdiction," *In re AWECO, Inc., 725 F.2d at 299*, it has also pointed out that a bankruptcy court is not authorized to be a "roving commission to do equity". *United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986).* Further, the Fifth Circuit has instructed  courts to "carefully consider the wishes of the **majority** of the creditors." *Foster Mortgage Corp. at 917 (emphasis added).* In the instant case, the Bankruptcy Court denied the Countrywide Settlement based on its wrongly and ill-conceived perception of what was fair and equitable only with regard to the third-party claimants and not to Realty's bankruptcy estate or the majority of creditors. While the Bankruptcy Court may have been trying to protect the rights of third-party claimants, the reality is that denial of the Countrywide Settlement actually causes more harm to the group of creditors  the Bankruptcy Court was trying to protect.

In the event the Bankruptcy Court's decision is not reversed (and just as importantly, <u>rendered here</u>), not only will the third-party claimants the Bankruptcy Court was so concerned about "lose" the $700,000.00 Fund against which to lodge their claims, they will also lose the convenience of having one forum in which to litigate those claims, they will lose the ability to have one lawyer represent all of their interests and they will also lose in another significant aspect. Specifically, the Countrywide Settlement provides a cash payment of $325,000.00 to Realty by Countrywide to be used to fund claims of creditors. The third-party claimants probably have priority claims under the Bankruptcy Code (specifically 11 U.S.C. § 507(a)(4)(A) and/or (B). However, if the Countrywide Settlement is denied, Countrywide has the ability to assert its post-petition secured claim (well over $300,000.00) against all assets of Realty, and, if successful in asserting its claim against Realty's otherwise "free and clear" assets, Countrywide will consume most, if not all, of the existing, liquid assets of Realty's bankruptcy estate, thereby, in effect, denying the third-party claimants any ability to collect on their priority claims from the $325,000.00 payment (or other free and clear assets) Countrywide has agreed to make. Further, continuing denial of the Countrywide Settlement, a failure to reverse the Bankruptcy Court and render a decision approving the Countrywide Settlement by this Court, would also eliminate the $700,000.00 Fund and the "one forum/one lawyer" convenience Realty has afforded to these third-party claimants, and would, in all likelihood, eliminate any chance the third-party claimants have to assert their claims. It would eliminate any fund that was not property of Realty's bankruptcy estate that could be used to reduce these third-party claimants' claims against Realty's bankruptcy estate, which would increase the amount of distributions available to non-priority creditors in Realty's Chapter 11 case. Accordingly, denial of the Countrywide Settlement is not a victory for these third-party claimants (as the Bankruptcy Court apparently presumed); it is a lose-lose proposition not only for the third-party claimants but for all

other creditors and parties in interest, thereby mandating a reversal of the Bankruptcy Court's Order

and **rendition** of judgment for Realty and Countrywide – a win for all.

The findings of fact by the Bankruptcy Court are clearly erroneous because the findings are

without any evidentiary support in the record. *Chaney v. City of Galveston, 368 F.2d 774, 776 (5th*

*Cir. 1966)*. The Bankruptcy Court failed to make an informed decision based on an objective

valuation of the overall situation before it, and, therefore it abused its discretion.

## VI. CONCLUSION

When this Court reviews the record and the Opinion of the Bankruptcy Court, Realty

respectfullly submits that this Court should determine that the Bankruptcy Court failed to consider

all of the factors as to approving the Countrywide Settlement. The Bankruptcy Court failed to make

findings showing its consideration of the factors mandated by the Fifth Circuit. Further, the

Bankruptcy Court gave no consideration to the fact that there were no objections to the Motion to

Approve Countrywide Settlement, thereby ignoring the unanimous support by Realty's creditors,

including the third-party claimants. Instead, the Bankruptcy Court ignored the factors favoring the

Countrywide Settlement and arbitrarily determined that the Countrywide Settlement was not "fair

and equitable". Accordingly, this Court should find that the Bankruptcy Court abused its discretion

in denying the Countrywide Settlement.

In the event this Court determines that the Bankruptcy Court abused its discretion by denying

the Countrywide Settlement, Realty respectfully requests that this Court reverse the decision of the

Bankruptcy Court and render a decision approving the Countrywide Settlement. Given the time

constraints in the instant case, Realty respectfully requests that this Court not remand this matter

back to the Bankruptcy Court.

With all due respect to the Bankruptcy Court, it is clear that the Bankruptcy Court had certain incorrect misconceptions with respect to the Countrywide Settlement, and considered only the interest of one special group of claimants in rendering its decision. The Bankruptcy Court ignored the wishes of the entire body of creditors (as evidenced by the lack of written objections) and, even while trying to somehow protect the third-party claimants (and thereby do "roving justice"), the Bankruptcy Court actually "gutted" not only the third-party claimants, but all parties of the estate. Even when counsel for Realty and Countrywide pointed out the errors in the Bankruptcy Court's misconceptions, the Bankruptcy Court persisted in its erroneous and detrimental decision, relying upon facts outside the record and "inventing" a finding – that Countrywide would argue the $700,000.00 Fund "caps" its exposure – when Countrywide's lawyers expressly disclaimed any sort of cap, release or injunction portion in the Countrywide Settlement.

Currently, Realty faces defaults in the Countrywide post-petition (and other) indebtedness on June 3, 2009. Unless that date is extended, Countrywide may then have the ability to liquidate certain assets upon which it holds liens and security interests in order to collect the DIP Loan – the same DIP Loan that Countrywide has agreed to forgive in the Countrywide Settlement. Thus, an urgent situation exists, not only justifying this Court's hearing this matter on an expedited basis and a reversal of the Bankruptcy Court's decision, but, just as importantly, rendering a decision in this Court approving the Countrywide Settlement so that the default date will not be violated and salvaging Realty's substantial rights under the Countrywide Settlement. Further, Realty respectfully submits that it would be futile for this Court to remand this matter to the Bankruptcy Court based on the following reasons: (1) because of the misconceptions the Bankruptcy Court announced and articulated at the Settlement Hearing and in its Opinion; (2) based on the Bankruptcy Court's refusal to reconsider its misconceptions about the Countrywide Settlement, even in the face of compelling

arguments that vitiated the Bankruptcy Court's misconceptions; and (3) in light of the "extra mile"

to which the Bankruptcy Court went in attempting to justify its decision that is clearly detrimental

to Realty and its creditors.  Realty prays for other such general and specific relief as this Court may

deem just.

DATED, this the 27th day of May, 2009.

Respectfully Submitted,

REALTY MORTGAGE CORPORATION

By Its Attorneys,

HARRIS JERNIGAN & GENO, PLLC

By:  _____

Craig M. Geno
Melanie T. Vardaman

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Jeffrey K. Tyree; MSB No. 9049
Melanie T. Vardaman; MSB No. 100392
HARRIS JERNIGAN & GENO, PLLC
587 Highland Colony Parkway (39157)
P. O. Box 3380
Ridgeland, MS 39158-3380
601-427-0048 - Telephone
601-427-0050 - Facsimile
F:\Users\Bankrupt\Realty Mortgage\Pleadings\Appeal\Brief\Brief.wpd